Garson, Ségal, Steinmetz, Fladgate LLP
164 West 25th Street Suite 11R
New York, NY 10001
Telephone:   (212) 380-3623
Facsimile:   (347) 537-4540

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NETALI NISSIM 1800, INC., <br><br> Plaintiff, <br><br> v. <br><br> RETAIL THERAPY JEWELRY, LLC, and PAMELA HAKIMIAN. <br><br> Defendants. | Civil Action No.: 1:19-cv-00968 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, NETALI NISSIM 1800, INC. ("NN" or, "Plaintiff"), by and through its attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, as and for its Complaint against defendants RETAIL THERAPY JEWELRY, LLC ("Retail Therapy") and PAMELA HAKIMIAN ("Hakimian") (collectively "Defendants"), alleges as follows based upon knowledge as to its own acts and upon information and belief as to all others:

**PRELIMINARY  STATEMENT**

1. This is an action for copyright infringement in violation of the copyright laws of the United States, namely, 17 U.S.C. § 501; infringement of a federally registered trademark and federal unfair competition, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1115, 1116, 1117, 1118, 1124 and 1125; trademark infringement and unfair competition under the common law of

the State of New York; and for violation of Section 360-1 of the New York General Business Law.

2. Plaintiff brings this action based on Defendants' unauthorized sale and distribution of jewelry featuring Plaintiff's EVIL EYE copyrighted 3-dimensional works and trademarks. Plaintiff seeks preliminary and permanent injunctive relief, compensatory, statutory, and punitive damages, and recovery of their reasonable costs an attorneys' fees.

## THE PARTIES

3. Plaintiff NETALI NISSIM 1800, INC. is a corporation duly organized and existing under the laws of the State of New Jersey and authorized to do business in the State of New York, having a principal address located at 900 Highway 9, Suite 201, Woodbridge, NJ 07095. Netali Nissim, an individual of Israeli citizenship and Milanese origins, is a jewelry designer specializing in the design and manufacture of elegant and modern jewelry for over two decades and serves as NN's principal. NN is the exclusive licensee of the Netali Nissim intellectual property rights detailed herein.

4. Upon information and belief, Defendant RETAIL THERAPY JEWELRY, LLC is a limited liability company organized under the laws of the State of New York in the County of New York, having a principal place of business located at 7 William Street, Great Neck, New York 11023. According it its website, http://retailtherapyjewelry.com, and the entity's Instagram® page, www.instagram.com/retailthreapy_jewelry/, RTJ sells "affordable & fun" "sterling silver and 14 karat gold jewelry in NYC".

5. Upon information and belief, at all relevant times, defendant Hakimian is an individual residing in the State of New York and was and is a principal owner and designer of corporate defendant, RJT.

6. Upon information and belief, at all relevant times, defendant Hakimian was and is a moving, active and conscious force behind defendant RJT's trademark and copyright infringement, with full knowledge that such conduct was wrongful.

## JURISDICTION AND VENUE

7. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Verified Complaint is if fully set forth herein.

8. This Court has original subject matter jurisdiction pursuant to: 28 U.S.C. §§ 133, 1338(a), and 1338(b); 17 U.S.C. §§ 106, 113, and 501 through 505; and, 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. This Court has general personal jurisdiction over Defendants as, among other things, they are residents of the State of New York and conduct systematic and continuous business within the State of New York.

10. This Court has specific jurisdiction over Defendants as the infringing products originate from the State of New York, are related to the State of New York, Defendants have purposefully availed themselves of the State of New York, and the infringing products have been purchased in, and delivered to, the State of New York.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(d) and 1400 as Defendants' contacts with the district are sufficient to subject them to personal jurisdiction, a substantial part of the events giving rise to the claims herein occurred in this district, and the matter involves acts of trademark and copyright infringement.

## FACTUAL BACKGROUND

A.   PLAINTIFF'S OWNERSHIP OF THE EVIL EYE DESIGN AND MARK

12. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Complaint is if fully set forth herein.

13. Netali Nissim ("Nissim") an individual of Israeli citizenship, currently residing in the United States, is a jewelry designer with an international portfolio of intellectual property rights relating to her various jewelry designs and related business endeavors. Included among Nissim's portfolio are the rights underlying the instant action.

14. In or about 2004, Nissim first published her evil eye design in connection with the sale of jewelry, including, without limitation, necklaces, bracelets, earrings, and rings (the "Evil Eye Design").

15. In or about 2004, Nissim also first published her jewelry design for her evil eye ring (the "Evil Eye Ring").

16. In or about 2009, Nissim applied to the United States Copyright Office (the "Copyright Office") to register the Evil Eye Ring. On or about August 20, 2009, the Copyright Office granted Nissim's application and issued a certificate of registration for the Evil Eye Ring, registration number: VA0001682318 (the "Evil Eye Copyright"). A true and correct copy of the Evil Eye Copyright certificate of registration and the Copyright Office catalogue entry evidencing the registration of the Evil Eye Copyright is annexed hereto as **Exhibit A**; a portion of the same is reproduced in Figure 1 below for ease of reference.

Figure 1:



17. Nissim's Evil Eye Design is wholly original to Nissim and constitutes copyrightable subject matter under the Copyright Law of the United States.

18. Prior to the acts of Defendants alleged herein, NN and its predecessors adopted, used and have continuously used the Evil Eye Design such that sufficient fame was acquired.

19. On or about November 5, 2014, Nissim submitted an application to the United States Patent and Trademark Office (the "USPTO") to register the Evil Eye Design in international Class 14 for jewelry, serial number: 865-445,763. On or about March 15, 2016, the USPTO granted Nissim's application registration number: 4,916,798 (the "Evil Eye Trademark"). A true and correct copy of the Evil Eye Trademark registration is annexed hereto as **Exhibit B**; a portion of the same is reproduced in Figure 2 below for ease of reference

Figure 2:





5

20. The Evil Eye Trademark is registered on the principal register, and the mark consists of "the three-dimensional configuration of a feature of jewelry in the shape of an eye. The eye is an elliptical design with small circles representing the jewels running around the ellipse. In the middle of the ellipse are concentric circles comprising the iris and pupil of an eye." **Exhibit B**.

21. In or about 2016, Nissim made an application to the European Union Intellectual Property Office ("EUIPO") to register the Evil Eye Design for a European Union trademark. On or about March 15, 2018, EUIPO issued a certificate of registration for the Evil Eye Design, No. 015575759 (the "Evil Eye EUIPO Trademark"). A true and correct copy of the EUIPO certificate of registration is annexed hereto as **Exhibit C**; and portion of the same is reproduced in Figure 3 below for ease of reference.

Figure 3:

Registered / Enregistré 15/03/2017

No 015574759

22. The Evil Eye Copyright, the Evil Eye Trademark and the Evil Eye EUIPO Trademark are collectively referred to hereinafter as the "Nissim Intellectual Property".

23. Nissim is the exclusive owner of the Nissim Intellectual Property.

24. At all relevant times, NN was, and remains, the exclusive licensee of the Nissim Intellectual Property.

25. Both Nissim and NN take the intellectual property rights inherent to the Nissim Intellectual Property, and the duty police and vigorously protect those rights against dilution and unfair competition, seriously.

B. **Defendants' 2016 Infringing Activities**

26. In or about February 2016, as a result of Defendants' postings on certain social media platforms, including Instagram®, Plaintiff became aware that Defendants were making use of the Nissim Intellectual Property in the design, marketing, sale and distribution of products identical to those of Plaintiff (collectively, the "Initial Infringing Items") in violation of Plaintiff's exclusive intellectual property rights. True and correct copies of Defendants' 2016 Instagram® posts marketing the Initial Infringing Items are annexed hereto as **Exhibit D** and reproduced in Figure 4 below for ease of reference.

Figure 4:



27. As those pictures contained in Exhibit D and Figure 3 above evidence, Defendants had misappropriated the Nissim Intellectual Property by modeling the Initial Infringing Items on

those designs developed by Nissim and marketed and sold by NN pursuant to an exclusive license agreement between the parties.

28. The Initial Infringing Items are unambiguous reproductions and clear facsimiles of the Nissim Intellectual Property.

29. The similarity of the copyrighted and trademarked material of Nissim and NN on the one hand, and the Initial Infringing Items marketed and sold by Defendants on the other hand, creates confusion of consumers familiar with the authentic products bearing the Nissim Intellectual Property, fostering an environment under which consumers will believe in error that Defendants' jewelry products originate from the same source, or are licensed, or otherwise sponsored by, Nissim and/or NN.

30. Indeed, Plaintiff and Defendants market and sell their respective products through many of the same trade channels, increasing the likelihood of confusion in consumers' minds.

31. Defendants have impinged on designs developed by Nissim and licensed exclusively to NN and have negatively impacted Nissim and NN's ability to negotiate with other jewelry companies and retail outlets to contract for the sale of items bearing the Nissim Intellectual Property, thereby compromising Plaintiff's ability to fully control the use of its trademarks, copyrights, designs and works.

32. The Nissim Intellectual Property is and has been famous since long prior to the commencement of Defendants' activities complained of herein.

33. Subsequent to the manufacture and branding of certain of the Initial Infringing Items, Defendants made the Initial Infringing Items available for purchase to consumers at locations including, *inter alia*, its e-commerce website, http://retailtherapyjewelry.com.

34. On March 1, 2016, counsel for Plaintiff wrote to Ms. Hakimian informing her of both her and RTJ's violations of, inter alia, title 17 U.S.C. §§ 501, et seq., by virtue of the unauthorized alteration, use and dissemination of the Initial Infringing Items and requesting the cessation of all sales of the same (the "Cease and Desist"). A true and correct copy of the Cease and Desist is annexed hereto as **Exhibit E**.

35. On March 8, 2016, Plaintiff's counsel received a response to the Cease and Desist from Defendants' counsel (the "Response Letter"). A true and correct copy of the Response Letter is annexed hereto as **Exhibit F**.

36. In the Response Letter, Defendants' counsel stated, in pertinent part, that "[the Cease and Desist's] claims have been reviewed. My client has complied with your request and has ceased the sale of products depicting Netali Nissim designs. Additionally, my client has taken down all online posts depicting the Netali Nissim designs." Exhibit F.

37. Explicit in the Response Letter is that Defendants recognized that the Initial Infringing Items were infringements of Nissim Intellectual Property.

38. While Defendants' unauthorized alteration, use, exploitation and dissemination of the Initial Infringing Items ceased temporarily following Defendants' receipt of the Cease and Desist, Defendants' compliance with NN's reasonable demands would not persist.

C.  **Defendants' 2018 Infringing Activities**

39. In or about May 2018, Defendants' unauthorized alteration, use, exploitation and dissemination of the Nissim Intellectual Property began anew with Defendants promoting new products infringing upon the Nissim Intellectual Property (the "Subsequent Infringing Items," and together with the Initial Infringing Items, the "Infringing Products") on defendant RTJ's

Instagram® page. True and correct copies of RTJ's Instagram® posts promoting the Subsequent Infringing Items are annexed hereto as **Exhibit G** and reproduced in Figure 5 below for ease of reference.



Figure 5:

40. As was the case with the Initial Infringing Items, the Subsequent Infringing Items are unambiguous reproductions and clear facsimiles of the Nissim Intellectual Property.

41. At no time did Nissim or NN grant permission of authority to Defendants to edit, alter, or otherwise make use of, the Nissim Intellectual Property.

42. Given the prior history in 2016, Defendants knowingly offered for sale Subsequent Infringing Items.

43. Upon learning that Defendants had resumed the sale and exploitation of the Infringing Products, in or about December 2018, Plaintiff placed a test purchase for the same to verify that the Infringing Products did indeed contravene Nissim and NN's rights in and to the Nissim Intellectual Property.

44. Plaintiff's suspicions were confirmed when, on December 11, 2018, Plaintiff received a specimen of one of Defendants' Infringing Products (the "Specimen"). A true and correct copy of the email delivery confirmation for the Specimen is annexed hereto as **Exhibit H**.

45. As the photographs represented in Figure 6 below demonstrate, the Specimen and the design underpinning the specimen are clear facsimiles of the Nissim Intellectual Property.

Figure 6:

46. Defendants shipped Plaintiff the Infringing Product Specimen from the State of New York, and the Infringing Product Specimen was received by Plaintiff in the State of New York.

47. Defendants' willful activities outlined herein have irreparably damaged Plaintiff and have caused Plaintiff monetary damages in an amount as of yet unknown. Defendants actions will continue to harm Plaintiff unless adequately restrained by the Court.

## COUNT I
[FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 101. ET SEQ.)]

48. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Complaint with the same force and effect as if set forth herein.

49. Defendants have violated the exclusive copyright rights of Plaintiff by publishing, altering, editing and making use of the Nissim Intellectual Property and publishing said Nissim Intellectual Property without the permission or authority of Plaintiff or Nissim.

50. Plaintiff has complied in all respects with the United States Copyright Act, including 17 U.S.C. § 408 and all other laws respecting copyright by first publishing the Nissim Intellectual

Property on its own website, periodicals, and marketing materials, and thereafter applying and receiving copyright registration for the Evil Eye Ring.

51. By virtue of the Cease and Desist, Plaintiff caused Defendants to be on actual and/or constructive notice of Plaintiff's copyright ownership of the Nissim Intellectual Property.

52. The Defendants' Initial Infringing Items and Subsequent Infringing items are substantially similar to Nissim Intellectual Property which is the subject of a copyright registration.

53. Notwithstanding Defendants' notice and knowledge of Plaintiff's rights, and without Plaintiff's permission or authority, Defendants have reproduced, copied, used, derived profits from, disseminated and digitally manipulated and/or altered the Nissim Intellectual Property. As of the date of filing, Defendants continue to do so.

54. Defendants' acts of infringement have been willful, wanton, knowing and in bad faith, has caused damages to NN and enabled Defendants to profit illegally therefrom.

55. Defendants' acts constitute copyright infringement in violation of the exclusive rights of Plaintiff under Section 106 of the Copyright Act, 17 U.S.C. § 106.

56. Defendants actions constitute copyright infringement in violation of Plaintiff's rights under 17 U.S.C. § 501 *et seq.*

57. The unauthorized and infringing use by Defendants of Plaintiff's copyrighted materials has and will continue to, unless enjoined, cause irreparable harm, damage and injury to Plaintiff. Moreover, Defendants have unlawfully and wrongfully derived and will continue to derive income and profits from their infringing activities.

COUNT II

[TRADEMARK INFRINGEMENT (SECTION 32(1) OF THE LANHAM ACT)]

58. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Complaint with the same force and effect as if set forth herein.

59. Defendants' use of the Netali Nissim Intellectual Property, and particularly the Evil Eye Trademark and the Evil Eye EUIPO Trademark, as a mark on and in connection with the Infringing Property and in the marketing and advertising thereof, is likely to cause confusion with the Netali Nissim Intellectual Property given the close similarity of the marks and the related nature of the goods in question.

60. Members of the public who see the Infringing Property are likely to believe in error that Defendants' goods are made or under license of Nissim or NN, or that Defendants' products are a line extension of the NN brand.

61. Use by Defendants of the Netali Nissim Intellectual Property in the Infringing Products and the marketing and advertisement thereof, is likely to cause confusion, mistake, and deception among the relevant public and trade as to the source or sponsorship of Defendants' goods and business and as to the affiliation of Nissim and NN with Defendants, causing harm to Plaintiff's business, reputation, and goodwill, as well as harm to the public.

62. Neither Nissim nor NN has consented, whether directly or indirectly, to use by Defendants of the Nissim Intellectual Property in connection with the Infringing Products, or the marketing and advertisement thereof.

63. The activities of Defendants complained of herein constitutes trademark infringement of the Nissim Intellectual Property in violation of Section 32(1) of the Lanham Act,

15 U.S.C. § 1114(1), to the substantial and irreparable harm of Plaintiff's business, reputation and goodwill.

64. Plaintiff has no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined, will continue to cause, irreparable harm to Plaintiff.

65. Plaintiff has sustained, and will sustain, damages from the aforesaid unlawful actions of Defendants, in an amount to be determined at trial.

### COUNT III
[FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(A))]

66. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Complaint with the same force and effect as if set forth herein.

67. Defendants' use of the Nissim Intellectual Property in conjunction and with the sale of the Infringing Products, and in the marketing and advertising thereof, constitutes a false designation of origin or sponsorship which is likely to deceive purchasers, prospective purchasers, and members of the relevant trade and public, into believing that products of Defendants are those of Plaintiff, or products authorized or approved by Plaintiff, or are sold by an affiliate of or under license from Nissim or NN, in violation of 15 U.S.C. § 1125(a).

68. Such use of the Nissim Intellectual Property by Defendants falsely suggests that Defendants are entities affiliated with Plaintiff, or that their products are the same as the products of Plaintiff, or that their products are produced under license or in association with Plaintiff, or that Defendants are an authorized agent of Nissim or NN, all of which constitute false or misleading representations of material fact in violation of 15 U.S.C. § 1125(a).

69. Plaintiff does not and cannot exercise control over the nature and quality of the products provided by Defendants under a mark and design that is confusingly similar to the Nissim Intellectual Property.

70. The activities of Defendants complained of herein constitute deliberate and willful violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71. Plaintiff has no adequate remedy at law. The conduct of Defendants complained of herein has caused, and if not enjoined, will continue to cause, irreparable harm to Plaintiff.

72. Plaintiff has sustained and will continue to sustain substantial damages from the aforesaid unlawful actions of Defendants, in an amount to be determined at trial.

### COUNT IV
[UNFAIR COMPETITION – FALSE ADVERTISING]

73. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Complaint with the same force and effect as if set forth herein.

74. The aforesaid acts of Defendants constitute false advertising in violation of 15 U.S.C. § 1125(a).

75. Plaintiff has no adequate remedy at law. The conduct of Defendants complained of herein has caused, and if not enjoined, will continue to cause, irreparable harm to Plaintiff.

76. Plaintiff has sustained and will continue to sustain substantial damages from the aforesaid unlawful actions of Defendants, in an amount to be determined at trial.

### Count V
[Trademark Dilution]

77. Plaintiff hereby restates and incorporates by reference each and every preceding paragraph of its Complaint with the same force and effect as if set forth herein..

78. The Evil Eye Trademark and the Evil Eye EUIPO Trademarks used by Plaintiff are famous in the markets and channels through which they are sold, including the jewelry markets, and attained such fame prior to use by Defendants.

79. Use of the Nissim Intellectual Property by Defendants on or in connection with jewelry and the marketing and advertising thereof, diminishes and dilutes the distinctive quality of the Nissim Intellectual Property used and registered by Nissim and licensed exclusively to NN in the jewelry industry.

80. The conduct of Defendants described herein and in the preceding causes of action in this Complaint dilutes and will continue to dilute the distinctive quality of the Nissim Intellectual Property and so causes and will cause irreparable damage to the Nissim Intellectual Property, in violation of 15 U.S.C. § 1125(c).

81. Plaintiff has no adequate remedy at law. The conduct of Defendants complained of herein has caused, and if not enjoined, will continue to cause, irreparable harm to Plaintiff.

82. Plaintiff has sustained and will continue to sustain substantial damages from the aforesaid unlawful actions of Defendants, in an amount to be determined at trial.

### Prayer for Relief

**WHEREFORE**, Plaintiff NETALI NISSIM 1800, INC. respectfully requests judgment against Defendants RETAIL THERAPY JEWELRY, LLC and PAMELA HAKIMIAN, as follows:

i. That Defendants' conduct as described herein constitutes:

    a. copyright infringement, in violation of the Copyright Act of 1976, 17 U.S.C. § 501;

    b. trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114;

    c. unfair competition in the nature of false advertising and false designation of origin and representations, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and

    d. trademark dilution, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1225(c)'

ii. That individual defendant PAMELA HAKIMIAN, as well as RETAIL THERAPY JEWELRY, LLC, its officers, directors, managers, agents, servants, employees, attorneys, related companies, licensees, and all persons acting for, with, by, through, and under them, be preliminarily and then permanently enjoined:

    a. from using the Nissim Intellectual Property as a mark or component of a mark or in connection with jewelry or other artwork not originating from Plaintiff or otherwise authorized by Nissim;

    b. from committing any act calculated or likely to cause purchasers, potential purchasers, or members to the relevant trade or public to believe that the business or goods of Defendants are sponsored, authorized, or otherwise approved by Plaintiff, unless they are such;

    c. from using in any manner the Nissim Intellectual Property, or any other false designations of origin, false or misleading representations, or

               otherwise commit any other acts of unfair competition or deceptive or unlawful trade practices, which may imply or lead the public to believe that a product or service not originating with Plaintiff is Plaintiff's product or that Defendants' goods are in any way sponsored, affiliated, approved, licensed or authorized by Nissim or NN;

      d.    from doing any other act which may, or is intended or designed or calculated to dilute, tarnish or disparage the distinctive quality of the Nissim Intellectual Property or the reputation of Plaintiff; and

      e.    from directly or indirectly copying, reproducing, manufacturing, promoting, advertising, distributing or selling promotional materials, packaging labels, advertising brochures, sale displays, and other material associated for their jewelry or other work which infringe upon the Nissim Intellectual Property.

iii.    Awarding Plaintiff damages or statutory damages pursuant to 15 U.S.C. § 1117(c)(2), in consequence to the willful nature of Defendants' use of the Nissim Intellectual Property in connection with goods sold, offered for sale, or distributed;

iv.    Awarding Plaintiff such damages as Plaintiff has sustained in consequence of the copyright infringement by Defendants, and to authorize and pay to Plaintiff all gains, profits, and advantages derived by Defendants from said copyright infringement.

v.    Directing Defendants to account to Plaintiff for their profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a).

vi.  Awarding Plaintiff such damages as Plaintiff has sustained in consequence of the unfair competition by Defendants, and to account for and pay to Plaintiff all gains, profits, and advantages derived by Defendants from said unfair competition;

vii.  Awarding Plaintiff three times such profits or damages, whichever is greater, together with prejudgment interest, as a consequence of the willful nature of Defendants' unlawful conduct;

viii.  Directing Defendants to recall and destroy all Infringing Products not yet in the hands of ultimate purchasers, including but not limited to the Infringing Products, labels, advertising, promotional materials, packaging, and point of sale displays bearing the Nissim Intellectual Property within (30) days of the entry of final judgment herein;

ix.  Directing Defendants to file with the Court and serve on counsel for Plaintiff, within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116.

x.  Awarding Plaintiff its reasonable attorneys' fees and full costs of this action pursuant to 15 U.S.C. § 1117.

xi.  Such other and further relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all of its claims so triable.

Respectfully Submitted,

Dated: New York, New York
January 31, 2019

Garson, Segal,
Steinmetz, Fladgate LLP

By: _____
Michael Smaila (MS1026)
Robert Garson (RG1521)
164 West 25th St, 11R
New York, NY 10001
(212) 380-3623

*Attorneys for Plaintiff*
*Netali Nissim 1800, Inc.*